Your Honor, Donald Cook for the plaintiff, Mr. Vehmeyer. There's no question here that obviously what happened to Mr. Vehmeyer, as he describes it, is not only excessive, but it's outright malicious criminal. The first question is really, can officers, these named defendants, these six defendants, who are identified in Officer Luna's report, as being present, some of whom are identified as using some force against Mr. Vehmeyer, be held liable for what Mr. Vehmeyer describes happened? And they can. The cases, Roofdale v. Burkitt, Santos v. Gates, they can be held liable. Whether the fact finder says it was Graham who put the dog on him, or it was just Graham that ordered the other officers to stand back so the dog could be put on him. The argument regarding the other three defendants, that is, if I pronounce the name correctly, Cuates, Blasevich, Gonzalez, those were the three Doe defendants who are also the subject of the next Vehmeyer case. It presents a very interesting issue. Rule 16 of the Federal Rules of Cause requirements versus California law on naming Doe defendants. If this case is in State court, they're brought in as Doe defendants. There's no requirement that Mr. Vehmeyer conduct some type of discovery, exercise diligence after the filing to identify him. That's the California rule. That's the California rule, but it applies here. And explain why you think that trumps the district court's discretion under Rule 16. Because the pleading of Doe defendants and the tolling provisions for naming Doe defendants is a matter of Federal substantive law as a result of the 1983 borrowing statute. Wilson v. Garcia says the foreign State's period of limitations, including tolling and applications, are a matter of substantive law for purposes of the 1983 action. They apply here. And, of course, in Mr. Yagner's Cabral's case, the argument there was, is that Rule 15 and its relation back requirements, et cetera, didn't work. Same reason. For the same reason in this case, Rule 16 shouldn't work. It shortens the period of limitations pursuing defendants. It imposes limits. But then when is it proper for the district court, is it ever proper for the district court to say you've got to substitute Doe defendants in by a certain date? I mean, can you do it right before trial? Where's the limit? Well, part of that is maybe on a case-by-case basis. Sure, you have a defendant, for example, who's concealed the identities of culpable parties that are within that defendant's control, and the defendant has had an opportunity to defend the action. In that case, I would submit you can even bring him in, reinstate Doe defendants, if it's still within the three years of filing the suit, right up to the time of trial. So the outside limit is, for sure, three years. And a shorter limit, well ---- Delay reduction programs that they have in state court, the limits are placed upon getting all the parties into the case. But those limits are nowhere near as strict as what you're faced with in federal court. First, in federal court, you cannot conduct discovery after you file the complaint. You have to wait until the scheduling conference order. Here, no discovery could be conducted before June 25, 2001. Then discovery was cut off in September of 2001. You've got that narrow window in which to conduct discovery. In this case, requiring that Mr. Viehmeier show good cause, given the restrictive right of discovery, that requirement cannot apply. I can't recall, but in the scheduling order, was there a limitation on ---- Sometimes in scheduling orders, they'll say, by such and such a date, any though defendants shall be brought into the case. Was there that limit? I mean, that kind of ---- In that kind of language, what it said is September, I think it was 25, 2001, the last day for bringing in parties, that's what the trial court relied on, one of the orders it relied on, in dismissing the three other defendants, because it was past the scheduling conference cutoff date and there was no showing of good cause. But sure, a court can set a time deadline for naming though defendants. But pretrial, we had not even come to the pretrial conference yet. We're not talking about coming up to the day of trial. So ---- Did you know that all parties brought into the case? It had already passed, correct. So, again, there was a very narrow, short period of time for discovery. Did you ever ask to have the discovery period extended? Well, I did not. No, I didn't. I did not ask because once I got the reports, which identified these three officers that are actually using force, not that just somehow they were involved, but that they had used force, I immediately named them as ghosts. And then I also, of course, filed a separate lawsuit, the second V.M. Meyer lawsuit. So there's really no reason for me to ask for a reopening of discovery. But, of course, the problem I had, according to the trial court, is I couldn't show good cause for determining these persons' involvement before September 25th of 2001. When did you get the police report? Well, there are several police reports at issue. Right. Officer Luna's report I had before the lawsuit was filed. And although he identifies all the officers just by listing their names, he only identifies six as actually being present and using some type of force when Mr. V.M. Meyer was arrested. And those are the six that I named originally. In January of 2001, I got additional reports in which the three other officers are identified as actually using force against Mr. V.M. Meyer. And then, of course, I named them as the defendants, and I filed a second V.M. Meyer lawsuit. And this is even well before any pretrial conference. This is well before any summary judgment. And within less than a year after the lawsuit was filed. Again, if I'm not mistaken. Had the pretrial conference been scheduled? I'm sure it had been because it should have been covered by the scheduling conference order of June 2001. So it had been scheduled. I'm sure. I just don't know offhand. So I don't think, given these facts, you can enforce the Rule 16 good cause requirement. You have to go with the California law on naming DOE defendants. And in this case, it's no different than the defendant Black and the Cabrales decision, who was brought in two years after that lawsuit was filed. Well, I take your point on that. The unfortunate thing, and I guess one thing we have to consider, is the fact that you didn't raise this in the district court, the Cabrales argument. That's incorrect. Do you have a record site for that? So we don't make an erroneous conclusion? It was in. You can save it for rebuttal if you want. I don't want to. It was my opposition to the motion. Okay. Or you could supply a 28-J on that. Because I think that's an important point that's been. Not that we couldn't consider it on our own, given the fact that you're denied a substantive right. But I think if you've raised that, I think that would be an important issue. So just get that to us. If I can turn to a related issue, the officer's photographs. Okay. I mean, come on. We've got a question of identity here. We know there are a lot of officers present. Mr. Viemeyer can identify some. Obviously, identification can implicate some, exonerate others. We asked for photographs. The magistrate judge says they're not relevant. And the district judge upholds that. It seems so patent that photographs of potential wrongdoers are relevant. At least reasonably calculate lead to discovery of admissible evidence. But that has to be error. And it would seem also pretty clear how that prejudges Mr. Viemeyer. He doesn't identify who's responsible. The other defendants all argue, we're not liable because you haven't identified us. This is an issue that recurs over and over again in these kinds of cases, identifying the right officer. It seems like if this order stands, what a plaintiff has to do is he has to just name every conceivable officer. Did you suggest a protective order? I'm sure I did. I know that I argued to the district judge that if there's really a problem with some type of privilege, make a protective order. That's what you do. Now, I know the other side argued before the district judge and before this court that, well, this implicates privacy concerns or privileges. There has never been a single piece of evidence put before either the magistrate, district judge, or this court to support that claim. Now, it may be true that some officer has the need to have his or her likeness dissemination restricted. Fine. Make a showing. But don't come in and say that, well, we have to keep our images under wraps just as a matter of general principle. Not when you're running cop shows. Not when you're giving TV interviews when it serves the police interest. And not when you present not a single piece of evidence from anybody to support that claim. And obviously, if the claim is legitimate, yeah, you can fashion some kind of protective order. So I think it's – Now, Mr. Viemeyer, was he able to – was it your – was it your – the purpose of the photographs, was it to assist Mr. Viemeyer in identifying who was present, or what was the whole purpose? To identify who did what, who was present, is what not only for Mr. Viemeyer, but also witnesses. Was this officer there? Is this officer there? I mean, we've got – we've got – the report that's before the court, and it was in evidence before the district judge, Mooney's report, suggests that it was Officer Graham who ordered the dog to bite. Now, of course, there's mention of another report, which never came into evidence, which says it was this Officer Qantas who actually ordered the dog to bite. Was that part of the record in any place? Officer Qantas' report never came into evidence. It was offered by the defendants in their summary judgment motion, but the district court struck it for lack of proper authentication, and it – So it really never became part of the record? Correct. It never came in on the summary judgment motion. Would you say that this – I'm sure you're familiar with the Rutherford case – Correct. And the Betty Jones case. Where does this case fit in to that situation? Well, we've got a group of officers, at least some of whom are using, according to the plaintiff, fairly malicious – using force maliciously in a criminal fashion. Some are standing there. Plaintiff cannot identify with precision, but a jury can infer that an officer who was there, according to the reports, according to the police accounts, either used the force or stood by and let fellow officers use the force. That's how it fits in. It's not a requirement that you identify an officer by name, rank, and serial number. That's what those cases stand for, and that's what we have here. We don't have that type of identification, but we do know they're there. I wonder, does the Betty Jones case really say that just being there is enough? Well, no. You know, you have to have an opportunity to intervene, right? And here, you know the facts of what happens. You know, he first gets beat up inside the room, knocked through a window, goes out in the driveway and gets knocked down and handcuffed, and the dog is put on him. Well, I submit that during the course of that event, that was enough time for an officer to intervene, to do something. And they didn't do that.  Well, are you referring to Rutherford and Betty Jones as a matter of failure to intervene or the acts of the officers themselves? Well, it really stands for both, because where you cannot identify the officer who's using the force against you, but the backfire may find that the force was used, it was excessive, and officers were present, then the officer is going to be liable on one or both of two bases. Using the force or failing to prevent your fellow officers from using the force. That's what I read those cases as standing for. If I can shift gears to the other defendant, David Reber. Judge Paez may remember him. Look, he goes out there and he tells these cops, he trains them, as he admits even in his declaration, I train them as to, you know, the legal limits of using dogs. And our position is very simple. You train these officers that the dogs are like grabbing somebody by the arm. And that is carte blanche, essentially. To the officers, you can get away with using the dog because it's like grabbing somebody by the arm. You can do anything with the dog. And of course, that's not reality. Everyone knows, should know, what you're really dealing with. But they engage in this fiction because they can back it up with what David Reber says, what their own department, who follows Reber's lead says, is that these dogs are like tightly grabbing. Grabbing someone and just pulling them down to the ground. You shouldn't be doing that. If he's going to train them as to when to use the dogs, then he should tell them, these dogs are likely to cause serious injury and you better use them accordingly. But he doesn't do that. Now, you know, you've got these state issues, state action issues. What you have here is Santa Ana hiring an outside contractor to provide training on an ongoing, regular basis to its officers on the use of force. That is sufficient to show state action. As to the negligence claim, look, you know the officers are going to be using dogs to attack and bite people. You know the dogs are likely to cause serious injury, but you train the officers differently. That's a breach of a duty that runs to people like Mr. Villamire who gets bit. I have about four minutes left. Unless there are questions, I'll save it for rebuttal. Thank you. Do you have a time agreement? Or just everybody's going to, it's a grab bag. Everybody's going to do their best to speak. Exactly. Okay. Go right ahead. I'm trying to be brief here. Absolutely. Because I do not want to get upon Mr. Dingman's time who represents Mr. Reaver. I'm Bob Dado. Good morning, Your Honors. I represent the Santa Ana defendants here. And I'll try and keep that in mind. And Trump, or Tramp rather. No, that's fine. With your permission, I guess I might as well take the issues in the order that Mr. Cook presented them. First, as to the no amendment issue, as set forth in our brief, the city contends this is an issue of federal civil procedure, not state civil procedure. As Judge Pai has recognized, even if the state law somehow applied, there are trial court reduction rules and circumstances in which even in a California state court, you don't have three years to name a defendant. It's not some sort of absolute state right that trumps federal civil procedure. For those reasons, we would set forth that there is some sort of law. So do you see any principled difference between Rule 15 and Rule 16 in terms of the application of substantive California law in this instance? Not really, no. So, I mean, aren't we stuck with that? Depending on your point of view, it seems to me that under these circumstances that we have a borrowing statute under 1983, and we don't have any direct law in Rule 16, but if California law applies under Rule 15, I don't see any principled reason why the same rationale shouldn't apply to Rule 16. Well, then I apologize, Your Honor. You may have omitted too much.  I do, in fact, see a principled distinction between those two in the sense that 16 is a purely case management procedural sort of mechanism and one in which it's the parties that suggested to the court, by the way, what these deadlines were. The parties knew at the outset that amendment of unnamed defendants was likely to occur. That's right in the order. This isn't something that Judge Carter came down and said, you have to do something by X date. This is something the parties agreed to and submitted to the district court and contemplated early on. There might be a situation with fictitiously named defendants. So I do think there's a principled distinction there and one which, at the very least, plaintiffs invited. They're the ones that came up with the deadline to begin with, and that is in the record. So I do think there's a principled distinction here and one that particularly applies here where, for months, Plaintiff's counsel is aware of the documents that would identify the officers that he later attempted to name. No disputes to that. It's set forth in Judge Carter's order in some detail. Of course, if California law applies, it doesn't matter because due diligence doesn't seem to be a requirement. Well. If it applies. If it applies. Certainly, if you know the identity under California law, at least as I understand it, if you know the identity of a defendant and you don't name him, her, or it, and then you later attempt to use the Doe statute and claim, well, yeah, I knew, but I just didn't name, that's an improper use of the bill of amendment under State law. We'd submit that's exactly the situation you've got here in the sense that you're on notice. Well, the California law is pretty clear, though, that due diligence isn't required to name a Doe defendant. But if you know and you still don't name, that's, at least as I understand it, that's a problem under State law. Well, if you know the name of the, if you know the party or at the time you file your complaint, that's a serious problem. You can't rely on the Doe provisions to do that. Let me ask you this. Why, if due diligence, and I think that's correct under California law. I may be mistaken, but it's, my understanding is it's not required. You know, the schedule in order to Rule 16 is kind of move the case along. Let's be diligent about getting this case through the system as quickly as possible. Correct. So why aren't we sorted indirectly into Rule 16, adding a due diligence requirement to adding Doe defendants? I think it's simply another mechanism to encourage people to be diligent to move the case along. In that sense, I guess it's somewhat redundant. It's an encouragement of law. What's your understanding today in California law with respect to the trial court's ability to place time limits on certain events? My understanding, and we can certainly brief this in more detail because you know the detailed discussion of this is not in the briefs. But my understanding is that the trial court has a tremendous amount of flexibility, depending on the kind of the case, in terms of scheduling things in order to get the case along and get it tried. Right. That's my understanding of how it works in general. I can't cite you chapter and verse, but that's my understanding. Well, I know there was a period of time when the trial courts tried to impose discovery cutoff dates that were inconsistent with the statute. Exactly. And the course of appeal said, no, you can't do that. You betcha, because you can't have local rules that somehow preempt the California code. Or judge-made rules. Or judge-made rules or local, local rules, something like that. And that's certainly the case. If you've got something that's inconsistent with statute, that's improper. At the very least, the parties have the minimums prescribed by the California Code of Civil Procedure, as I understand those cases. And I think that's all that those stand for. So why isn't that the case here? You've got the state law that prescribes the DOE procedure. Can you trump that by an order issued under Rule 16 or a state law equivalent? And I would submit for the reasons that we've set forth and briefed, yeah, that's a matter of federal civil procedure, not state civil procedure. And it's not the same sort of a situation. That is our position on that. Right. Now, I think I understand that. I mean, the difference here is if given under 1983 of the borrowing statute, then they import some of the substantive rights under California law. That's the argument. Right. That's where that issue is going. That's certainly the case. In the California situation, is the judge in violation of state law if the judge shortens the period for naming DOE defendants? I said I don't want to wait three years. I'm going to make you do this within six months. Would that violate that state statute? I don't believe so. I'll tell you why. And I can't say categorically no because I can't think of a case off the top of my head. But if what the trial judge says is, look, we're going to get this trial, we're going to get this case set. I'm setting a trial date right now. It's six months out. And assuming that goes forward, obviously it's not going to be three years that you have to name the DOE defendant. I am not aware of any case law that says setting the trial six months out violates Code of Civil Procedure Section 474. That's within the trial court's discretion to set timing of the proceedings. And the fact that two and a half years later your 474 time expires I think is irrelevant. So but to directly answer your question, Judge Reed, I don't know of a case directly on point, but it wouldn't make any sense. Very few cases go three years anymore. When the DOE amendment statute was originally enacted, as I recall, it was noncommon at four and five years. Right. That the cases would go. Obviously that doesn't occur these days. And it seems to me it can't. I don't know of a case that says this is a violation of 474 because you set your case in six or nine months. So it can't set an absolute three-year deadline. That makes no sense from a judicial administration point of view. It can't operate that way. That can't be what the legislature intended on 474. That would be. Would you address the photographs? Yes. I'll be happy to address the photographs. The orders from both the magistrate judge and the district court are obviously before you. And the district court basically held the privileges that are implicit in the city's arguments here. The magistrate judge adopted those. The district court thought that there's no abuse of discretion, which is the standard we're operating under here. To address the prejudice, I can concoct a scenario under which if plaintiff had tried alternate means of discovery and had been shut down and came back to the magistrate or to Judge Carter and said, look, this is the only way we can identify these officers, you might have a case for abuse of discretion under those circumstances. But the bottom line here is that there was no other discovery attempted. So in the city's estimation, there's no showing of prejudice because no other avenue was attempted. It seems to me that if you're going to show abuse of discretion, you've got to do your homework, so to speak. Why is that the rule, though? I mean, why do they have to attempt other means of discovery before? In order to show prejudicial error. Well, no, I understand that. But I mean, in terms of their entitlement to the photographs, the purpose of identity, why do they have to – why is there a legal requirement that they have to engage in other forms of discovery? I don't think there is, is there? What I am saying is that – I understand your argument, but it seems to me that it also implies that the plaintiff should have done something else other than ask for the photographs before engaging in discovery of identity through photographs. No, I'm sorry. I'm not suggesting that. I didn't mean to – if I made that temporal argument, I'm not intending to do that. But what I am saying is if a motion is made regarding the photographs and that goes against you, I think you have an obligation to attempt to identify in some other fashion before you can come to this or any other court and say this was prejudicial, I couldn't get it any other way. And that's what I understand to be the plaintiff's argument. This was the only way that I could show identity, so therefore it's an abuse of discretion. I take your point on that. But why wasn't it relevant evidence? We've got two sets of photographs. Are you talking specifically about the photographs of the officers as a case of dog bites? Yes. Because I don't want to confuse. I'm not going to stand up here and say, and I don't believe that the city contended below, that the photographs of the officers themselves were irrelevant. My understanding of the argument was it was highly prejudicial. Why is it prejudicial? It's because of the nature of the work that these particular officers do. You can have all kinds of protective orders. I understand. Those were not proposed, as far as I know. It was a we get them or we don't sort of a situation. And under those circumstances, it's a question of do you have an abuse of discretion by denying that particular form of discovery? We submit no. Is your opponent argued that there was no evidence to show officers safety was endangered by showing their photographs? What about that? What the city argued below, what the record demonstrates here is no. Was there a specific evidentiary showing officer by officer? No. I'm not going to stand here and say there was. The argument was made. This is what these officers do. There is authority for the proposition that that puts these officers in danger. And that's what the record is in front of this court. And we stand or fall on that showing, but that's what it is. And under those circumstances, then it's a question of abuse of discretion. And it's also a question, at least in my mind, what happens then? Even assuming it's error, what happens then? And the answer to that question is nothing. Nothing happens then. No other alternatives. We've already been there. I'm not meaning to repeat myself. Yes. But we do think that is relevant to the equation. Well, it is odd to be at this stage of litigation and have identity and at issue as to who did what and the city resisting apparently any attempt to identify the individual officers in their role. And if you disagree with that, I see you do. Go ahead and tell me why. I'm sorry. My body language is talking way too loud this morning because I don't believe it's a fair characterization that the city was resisting all efforts to identify these officers. It's true the city was resisting one effort to do so. Absolutely. I'll agree with that. I don't think it's a fair characterization to say that that is the case on a global basis. There's no interrogatories. There's no depositions. There's nothing attempted to identify these officers in any other way. And that is what the city believes is the problem here. Nothing ever else attempted. Pretty logical manners that we can all think of to identify these officers. No resistance there. So you're saying if he just asked you who they were and who did what, you would have said, okay, I'll tell you right now. Interrogatories or depositions, we don't know. It was never attempted. And that's the record that we have here, which is nothing. At the early meeting of council, was there any exchange of information? On the early meeting of council, I don't know. That is not in the excerpts. I can't tell you off the top of my head. I've got trial counsel here who would know that answer right off the top of her head. I don't, as I stand here. I do know, and obviously what is in front of you, is the initial disclosure. And that comes about three months after the case is filed, if I've got my timeline right. So all that evidence, not all that evidence. A list of all of those documents is there early on. One thing that Mr. Cook happened to mention in his presentation was that the discovery cutoff was the same as the time limit in which to name does. That is not correct. If the court looks at excerpts of record page 24, the discovery cutoff is about three, four months later. The Doe cutoff is basically late September and discovery cutoff isn't until the following January, the end of the following January. There is time in there. Four months difference between those two things. So there was time to do discovery under those circumstances. But the Doe time period already expired. That's true. So in order to add a Doe defendant, he would have had, during that four-month period, he would have had to go back to the district court and ask for an order amending the scheduling order. And to do that, he would have had to show good cause. True. And he would have had to have overcome the fact that in late June, he's got a list of the documents that identify these three officers, and yet nothing happens until the end of September when the Doe cutoff expires. So that's true. That's the problem. It's that three months that nothing happened. When did he learn that these three officers were involved? He states in a declaration. I mean, to the extent of having abused his client. He states in a declaration that comes January 2002. He states that he doesn't actually review the reports that are identified in June 2001 until January 2002. But then the reports were available to him, or he had the reports that showed these officers were involved? What he had was he had the list of documents in the initial disclosure. And under the rules as I understand them, if it's in the initial disclosure, all one has to do as a party is to informally request that the other side send it. That's supposed to take place at the early meeting of counsel, listing of documents and an agreement to exchange information. And that. Not, well, he didn't serve us with a set of interrogatories. No, I understand that. Sure, sure. Or request for protection of documents. Right. But certainly early on, all the list of the documents that the city thinks it's going to rely on are before him. That's in June. The Doe Amendment expires in September without anything being done. Well, there are. Some of what these interrogatories are that I have before me, Officer Graham and others respond. And the question is, what is the identity of each person, including yourself, who is present to place the incident immediate supervising officer and describe involved in each person subjected to on a lengthy basis? And the defendant, Graham, says he was assigned and describes that in a one sentence. And that says the other information is in the reports. I mean, they did ask, as far as I can tell, unless I've got. What I don't know, and I can't represent the court one way or the other, is what the date that is, because I don't know off the top of my head what the date is that before or after the Doe Amendment cutoff. And I don't know. I don't want to misstate. December 17, 2001. I'm sorry? December 17, 2001. Okay, so it's after the Doe Cutoff. It's before the discovery. Well, that's the answer. I don't know when it was propounded. And I don't either. And I don't want to misstate. Was there some discovery propounded at some point in time? Yes, there was. Okay. There are 14 seconds left of your total time. Oh, boy. Under those circumstances, then, if Mr. Dingman wants to address briefly, I would ask the Court's indulgence. Yes, we will. He's here. I've overused my time. Well, we asked you a few questions. I understand. But it's my obligation to manage my time. Thank you. May it please the Court. My name is Wally Dingman. I represent Mr. Reaver and his business, Adler Horse, in this case. Your Honor, first of all, I'm aware, I believe, that at least one member of this Court has some understanding of the history between my client and Mr. Cook in terms of litigation. You're talking about Judge Paez? Yes. Or a man. And, unfortunately, I do, too, which puts me in somewhat of a subjective position, and I'm trying to avoid that. It sounds like you had a mutually, as far as the legal fees are concerned, it's been a mutually agreeable relationship. It's been a lot of business for your firm. The problem is my client doesn't have any insurance, and so he's putting the belt on. Okay. That was bank decisions, obviously. Your Honor, first of all, I appreciate Mr. Cook's admission that his client's testimony was that when the dog was placed on him, he was already handcuffed and on the ground. That basically raises the issue that there was no evidence whatsoever ever presented in anything that was produced by the plaintiff in response to my motion for summary judgment indicating that Mr. Reaver teaches that. And, in fact, Mr. Reaver, in his declaration, says that he doesn't. And it's very obvious, I believe, that no right-doing person who has been in business for 25 years would do something like that. With respect to Mr. Cook's argument against Mr. Reaver that he trains dogs on the legal limits of the use, Mr. Reaver does have an attorney come out and give a legal class. And, in fact, you're looking at him at this point in time. There have been other attorneys that have done it in exchange with me, but I've done a majority of that. What Mr. Reaver does, and it's a result of inartful questions and depositions and self-serving interpretations of the answers that Mr. Cook got in those depositions, what he does is he trains how to use the dog, how to control the dog. He doesn't say, well, if the defendant does this, then you can use the dog, or if you know these factors, then you can use the dog. It's simply a matter of teaching how to control the dog. With respect to the argument that Mr. Reaver is somehow negligent or unconstitutional in teaching the dogs or teaching the handlers that when the dog bites, he simply grabs an arm and doesn't do any serious injury, I believe that you would have to believe that the officers are so ignorant that when they go through their training period and they have to take bites as a result of part of the training, which has the purpose of teaching them what the dog can do in terms of a level of force. And the officers are well aware under the Rutherford v. Dorling case that it's a serious use of force, and they know that. And as a matter of fact, I recently read a pleading in another case where Mr. Cook himself said that it should be reasonable to any officer with regular mental facilities that a dog bite is going to do some damage, and especially in this kind of an environment where the suspect is trying to get away. Are the trainees, they have to submit to being bitten by the dogs? Yes, but they don't do it without equipment. I don't want to mislead you on that fact, but that's part of teaching what the level of force is that a dog constitutes. So they bite some kind of a mitt or something? Usually because police dogs are trained for body bites, which is because you never know when you're going to be able to get the dog on the suspect if, in fact, it's necessary to do that. They're trained on bite suits, and bite suits cover the whole body except for the head and hands. Thank you. I don't want to use all your time. I really don't have anything else other than I believe that the record is replete with reasons, but Judge Carter said there was no evidence produced as to Mr. Reaver's involvement in this thing, any possible causation that he had with respect to this. I will also point out this. In my initial disclosure with respect to one of the officers that's in the matter that you were dealing with about the doe defendants, I disclosed only that handler. That's Officer Cuihaus. I disclosed him early on and said this is going to be one of our witnesses. Mr. Cook did no discovery on my client, and our reason is because of the past history he's got. He's got reams and volumes, and I can't tell you how many depositions he has of Mr. Reaver's. And so he didn't – I'm speaking for him, and I probably shouldn't, but he didn't need to take Mr. Reaver's deposition. He didn't need to give us discovery in this case because he had all the answers. Unfortunately, all the answers came in in 1991, in 93, in 95, nothing current. He didn't even have a deposition where he said, do you still do this? Do you still do that? If I had been there and the questions were as bad as they were initially, I would have objected because they tend to be vague and ambiguous and don't get an answer that really helps anybody. With that, Your Honor, unless there's questions, thank you very much. What has happened over the years is that Mr. Reaver, with the assistance of his attorney, has gotten religious about what to admit to and what not to admit to. There's never been any showing that Mr. Reaver's training has ever changed. With respect to the Cabrales argument that Judge Thomas raised, you'll find it in plaintiff's opposition to the motion to strike the Doe defendants that was filed February 13, 2002. It's at pages 140 and 141 of the excerpts of record. What was that again, page? 140 to 141. Thank you. A couple of other details. My opponent is correct. The day for last day for adding parties was September 25, 2001. The discovery cutoff date, however, was January 28, 2002. We'll find those dates in the scheduling conference order. But suppose the date to add Doe defendants had been after the discovery cutoff date? Well, you would still have the same problem because you have to show good cost under the scheduling conference order. And the argument would be, well, I take that back. In my case, if I had the date a later date, then presumably my Doe amendments would have been tied. Well, theoretically, I mean, you can't really complain about a discovery cutoff date.  And so presumably, if you're actively pursuing your discovery and, you know, moving the discovery along, when discovery cutoff ends, you presumably have all the information you need to go forward. Well, sometimes you do. I mean, certainly the court may presume that you have all the information you can expect to get under the discovery rules. But, of course, as a litigator, you may still be gathering information. And you can, of course, gather information outside of the discovery process. No question about that. And so but if we had had the last day to add parties after the discovery cutoff date, then my Doe amendments would have been timely because the DCO was January 28th, and I filed the Doe amendments before January 28th. Incidentally, the defendants have confused us somewhat. It's true. Right from the start, from the early meeting, the defendants disclosed the identities of the three officers, Vlasovic, I think, Gonzalez, and the other dog handler. And there was some reference to reports by them. But the actual reports themselves, which actually described what these officers did, were not produced until January of 2002. And that's in the excerpts of record at page 144, paragraph 7 of my declaration. I think they do not dispute that. When were they finally disclosed? The reports themselves were not produced until January of 2002, actually a few days before I filed the Doe amendments. The names of the officers were known before. And I'm not – I don't want the Court to think that that's when I found out their names. I knew their names even before I filed the lawsuit. You say produced. Was that in response to a request for production of documents? That's correct, Your Honor. That's when I got them. There was a dispute between the attorneys as to what the agreement was on disclosure of documents. My position was that documents be voluntarily produced. The defense counsel, Ms. Shen, said, no, no, no, you still have to make a request for production. We only agreed to identify. And anyway, as I say, that's disputed. For the law on naming Doe amendments, the General Motors case, which is cited in the brief, is a very good case because it reviews – it's one of the best summaries of California law on naming Doe defendants. And it's not just the identity, it's the involvement of the Doe. Right? You have to know both. As of the time of filing. As of the time of filing, correct. There is a California case, with permission of the Court, I'll provide the citation, where the Court of Appeal held it error for the trial court to prematurely dismiss Doe defendants. And with the permission of the Court, I'll submit that case. The magistrate judge did not rely on any claim of privilege. All you have to do is read the magistrate's order. This is his order denying production of the photographs. It's just that it was not relevant. The trial court. In California, can the judge shorten the Doe naming deadline to shorter than three years? By setting the trial as your opponent has suggested? Well, by setting the trial, sure. But other than maybe setting an earlier trial date, then I don't think the California court has that power to do that. With consent of the parties, you can agree to dismiss all the Doe defendants. The judge says, I want to clean up this calendar. I want the Doe defendants disclosed within one year. Would that be a violation of California law? Yes, I think it would be. And I think there's a case on it. With the Court's permission, I will provide the citation on that case. I'm already over my time. Let me ask you one question, though. In terms of your theory now as you stand here today, the theory is that Quijas gave the order for the dog to attack. I mean, it's a little bit ambiguous between the two cases. And you've either got to say Graham or Quijas, it seems like to me. At this stage, at the summary judgment stage on the VMI versus Santa Ana case, I take my best set of facts from the evidence in that case, which is I got the report by Luna saying basically Graham ordered the dog to attack, right? At some point when I get to trial, I'm sure it's just going to be one officer and it may be it was Quijas. I don't have to make that election right now. What I do know is obviously there's evidence indicating it was Quijas who ordered the dog to bite. I do know that, which is why I want to bring them as a defendant. So I don't think it's fair to hold me to an election at this point. Okay. Well, you really argue the Quijas case next. Right. Anything else you want to say quickly? Reavers claimed that, well, I don't teach him to use dogs maliciously. Well, neither does Santa Ana. But Santa Ana, we know, as the municipality, can still be liable under a Monell type theory. Reavers is any different than the supervisors in the Chu versus Gates decision, who could be held liable for their defective training. It's just that Reavers is a private party, whereas contracted to hire to work for Santa Ana, whereas the Chu supervisors were obviously LAPD officers. Okay. Thank you. Thank you for your argument. Cases here will be submitted.
judges: Thomas, Paez, Reed